**In re ESTATE OF Ferdinand E. MARCOS HUMAN RIGHTS LITIGATION.**

**This Document Relates to all Cases.**

**No. MDL 840.**

United States District Court, D. Hawai'i.

Nov. 30, 1995.

Robert A. Swift, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, and Sherry P. Broder, Honolulu, Hawai'i, for Class Plaintiffs.

Paul Hoffman, ACLU Foundation of Southern California, Los Angeles, CA, Randall H. Scarlett, Brown, Monzione, Fabbro, Zakaria & Scarlett, San Francisco, CA, and Melvin Belli and Caesar Belli, San Francisco, CA, for Individual Plaintiffs.

James Pau Linn, Linn & Helms, Oklahoma City, OK, and Lex R. Smith, Kobayashi, Sugita & Goda, Honolulu, Hawai'i, for Defendants.

OPINION AND ORDER

REAL, District Judge.

**I. BACKGROUND**

Close to 10,000 plaintiffs brought suit against the former President of the Philippines, Ferdinand E. Marcos ("Marcos"), for damages resulting from torture, summary execution and disappearance, in the form of a class action as well as individual actions. Marcos died while the cases were pending, and the Estate of Marcos ("Estate") was substituted in Marcos' place, with his widow, Imelda R. Marcos, and his son, Ferdinand E. Marcos, appearing as representatives of the Estate.

The case was tried before a jury in three phases: (1) liability, (2) exemplary damages, and (3) compensatory damages. After the jury found the Estate liable for acts alleged, the jury returned a verdict of about $1.2 billion in exemplary damages and about $800,000 in compensatory damages. The Estate has made no effort to satisfy the judgment which has been entered against it, claiming it has little or no assets.[1]

---

1. Contrary to this claim the deposition of Imelda Marcos herein belies the poverty of the Marcos family and the Estate. Declarations made in the case of CV86–3859–MRP: *The Republic of the Philippines v. Ferdinand E. Marcos, et al.,* and

The evidence at trial demonstrated that the Estate had approximately $320 million deposited in Swiss bank accounts in Switzerland. In her answer to Plaintiff's Interrogatory No. 4, Imelda R. Marcos was asked to identify,

> "each asset belonging to Ferdinand Marcos as of his date of death (whether real property, personal property, or property beneficially or equitably owned or owned in conjunction with others)...."[2]

Her response was,

> "... I believe other assets of my late husband may be located in the following banks in Switzerland: Credit Suisse, Banque Paribas (Suisse), Lombard Odier & Cie, Swiss Bank Corporation, Swiss Volksbank, Fianz AG, Trade Development Bank. I believe the approximate amount which may be located in accounts in these banks to be in the range of $300 Million—$320 Million.[3] *Id.*

In *In re Estate of Ferdinand Marcos, Human Rights Litigation,* 25 F.3d 1467 (9th Cir.1994), the Ninth Circuit affirmed this Court's preliminary injunction prohibiting the Estate from transferring, secreting, or dissipating the estate's assets during the trial. The Circuit similarly upheld this Court's findings that the Estate has about $320 million in Swiss and Hong Kong banks. It wrote;

> [T]he district court found (1) that an ultimate judgment would likely exceed $320 million, (2) that the Estate has about $320 million in assets in banks in Switzerland and Hong Kong, ...

> The district court did not abuse its discretion in preliminarily enjoining the Estate from transferring, secreting or dissipating the Estate's assets *pendente lite.* The district court applied correct law, and its factual findings (not challenged by the Estate) support the conclusion that money damages would be an inadequate remedy due to evidence that the Estate has engaged in a pattern of secreting or dissipating assets to avoid judgment. *Id.* at 1480.

After judgment was entered the Estate refused to cooperate in satisfaction of the judgment in this case and in other cases brought by the Philippine government and others to recover assets of the Estate.

Although the case was tried in the District of Hawaii, post-judgment, this Court signed an order directing the clerk to certify the final judgment for transfer to other districts. Plaintiffs have filed only one motion to transfer, to the Central District of California. The order directing the clerk to certify the final judgment for transfer to other districts was entered on March 14, 1995.

In an attempt to enforce the judgment this Court ordered that the representatives of the estate execute an assignment of the assets deposited in Swiss banks to the plaintiff class as partial satisfaction of the judgment entered on February 3, 1995.

## III. DISCUSSION

### A. Power to Enforce Judgment

■ In law settled, for more than a century, there can be no question that a court's power to render a judgment includes the power to enforce that judgment. As early as 1867, the Supreme Court held,

> "... [T]he rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. Express determination of this Court is, that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied." *Riggs v. Johnson County,* 73 U.S. 166, 186, 18 L.Ed. 768, 6 Wall. 166 (1867). The dearth of published opinions in this area since the *Riggs* decision demonstrates just how well settled is the principle it enunciated.

*See generally,* 7 (part 2) Moore's Federal Practice ¶ 69.03[2] (2d ed. 1995). The Ninth Circuit recently restated the *Riggs* principle

---

statements made by Imelda Marcos to the court therein are obviously false.

**2.** Defendant's Answer to Plaintiff's Interrogatory No. 4, attached to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, filed with the Court on November 1, 1991.

**3.** *Id.*

in a case where a judgment creditor sued to collect on a judgment against an alter ego of the judgment debtors. Citing *Riggs,* the Ninth Circuit held that the District Court retains federal jurisdiction until the judgment has been enforced.

Consistant with *Riggs* and its progeny this Court clearly has the power to enforce plaintiffs' class action judgment against the Estate. The issue of first impression here is whether this Court has the power to assign a judgment debtor's right, title and interest in assets to the judgment creditor. Two separate and distinct lines of analysis demonstrate that it does.

### B. Court's Implied Power to Assign

■ First, implicit in the power to enforce a judgment is the power to use all legal means to provide relief to judgment creditors in an appropriate case. Assignment of funds is one of those means.

See *Chicago Pneumatic Tool Co. v. O.V. Stonestreet, et al.,* 107 F.R.D. 674 (S.D.W.Va. 1985). In that case the plaintiff requested that the defendant be required,

"to convey or assign to the United States Marshal for the Southern District of West Virginia, such money, bank notes, securities, evidences of debt, other personal property, chooses in action or other intangible personal property as may be ordered by the said commissioner for enforcement and payment of the judgment including interest and costs, outstanding in the above matter." *Id.* at 676.[4]

Despite defendant's arguments about limitations on the power of magistrate judges, not here relevant, the Court concluded that in entry of any order requiring the debtor to transfer property to the creditor, the magistrate would only facilitate the District Court's inherent power to enforce plaintiffs' judgment.

■ Similarly this Court has the inherent power to order the Estate to assign its rights, title and interest to the Swiss bank accounts to plaintiffs, given the uncontroverted evidence that those assets belong to the debtor Estate.

An equally compelling basis for ordering the assignment is FRCP 69(a), also relied upon in *Chicago Pneumatic, supra.*

### C. FRCP 69(a)

Federal Rule of Civil Procedure 69(a) provides,

"Process to enforce a judgment for the payment of money shall be a writ of execution, *unless the court directs otherwise.* The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." F.R.C.P. 69(a) (emphasis by the court)

In *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La, Inc.,* 1993 WL 414664, 1993 U.S.Dist. LEXIS 14450 (E.D.La.1993), plaintiff moved the Court to enter an order directing the sale of the rights and interest of the Partnership in a case where judgment had been entered a year earlier. The District Court looked to Louisiana law as the law of the state in which the action occurred. Applying the appropriate statute[5], the Court ordered judicial sale of the property by the United States Marshal. Similarly, in *Moseley Assoc. v. Brown,* 1988 WL 68149, 1988 U.S.Dist. LEXIS 5662 (S.D.N.Y.1988), the district court looked to state law, then New York Debtor and Creditor Law, to order defendants to satisfy plaintiffs' judgment out of funds which had been transferred to them.

---

**4.** The Court's concern was that plaintiff's request, if granted, would allow a federal magistrate to affect the property rights of the parties. And, "[p]arties to a litigation have a due process right to have 'cases' or 'controversies' determined by Article III judges." *Id.* at 676.

**5.** *See* LA.REV.STAT.ANN. section 13:3867 (West 1992) ("If the debtor whose rights and

interests in a pending suit have been seized shall refuse or neglect to prosecute his cause of action, the seizing creditor may require him to show cause why the rights and interests in the suit should not be sold under the seizure, and upon hearing of the rule the court may order such sale if it appears that the debtor has failed or neglected to prosecute his cause of action the final judgment, or appeal.").

The question here is what state's law applies to enforcement mechanisms and thus to whether assignment may be ordered.

 In this case, the judgment was entered and an order was signed transferring the matter to other districts for the purpose of execution. The only district in which a transfer was sought and the judgment registered was the Central District of California, the location of branches of the Swiss banks holding the money here at issue. The Swiss banks branches are located in Los Angeles, plaintiffs are conducting judgment debtor discovery in California, and all discovery disputes are before this Court in the Central District of California. Under these circumstances, California law should apply since the matter is now in California, solely for the purpose of executing the judgment. Moreover, Hawaii law is consistent with this disposition.

### D. California Law

 California law on assignment of right to payment in enforcement of a judgment provides,

> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor or to a receiver appointed pursuant to Article 7 (commencing with Section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments, ..." CAL.CIV.PROC.CODE section 708.510 (West 1987).

Case law interpreting this statute has consistently upheld a courts' power to require debtors to assign their interests in debts or other property.

See, e.g., *Philippine Export and Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App.3d 1058, 267 Cal.Rptr. 457 (6 Dist.1990). *See generally*, 8 Witkin, Cal.Procedure (3d ed. 1985), Enforcement of Judgments, §§ 299 and 300; *Civil Procedure; enforcement of judgments*, 14 Pacific L.J. 397, 431 (1983). Similarly, here CCP 708.510 and its case law exegesis permit an order of assignment of the Estate's interests in the Swiss accounts for the benefit of the judgment creditors, class action plaintiffs.

### III. CONCLUSION

For all of the above reasons, the defendant Estate by Imelda Marcos and Ferdinand Marcos, Jr. are ordered to forthwith execute an assignment of the funds in the respective Swiss banks in favor of the class and individual plaintiffs. In default thereof the clerk of the court is ordered to execute the assignment on behalf of the judgment debtor.